UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KEVIN CENCELEWSKI, | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Cause No. 3:15-cv-580 RLM-MGG |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

Kevin Cencelewski seeks judicial review of a final decision by the Commissioner of Social Security denying his applications for disability insurance benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court reverses the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

I. Background

Mr. Cencelewski filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability due to posttraumatic stress

---

[1] Nancy A. Berryhill was automatically substituted as the defendant in this case when she replaced Carolyn W. Colvin as the Acting Commissioner of Social Security pursuant to Federal Rule of Civil Procedure 25(d).

disorder, depressive disorder, anxiety disorder, sleep apnea, chronic pain, hearing loss, gastrointestinal problems, migraine headaches, and chronic back pain. His application was denied initially, on reconsideration, and following an administrative hearing at which Mr. Cencelewski and a vocational expert testified. Based on the record before her, the ALJ found that Mr. Cencelewski had severe impairments, including posttraumatic stress disorder, depressive disorder, anxiety disorder, sleep apnea, chronic pain, and tinnitus with hearing loss,[2] but concluded that none of Mr. Cencelewski's impairments met or medically equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

The ALJ decided that Mr. Cencelewski had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limitations;[3] and that he couldn't perform his past relevant work, but could do other jobs, such as after hours housekeeper/cleaner, office helper, and production sorter. The ALJ concluded Mr. Cencelewski wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits.

---

[2] The ALJ also found that Mr. Cencelewski had non-severe impairments: gastroesophageal reflux disease, lumbar spine impairment, headaches, diarrhea, hypertension, fibromyalgia, and substance abuse disorders in remission.

[3] The ALJ concluded that Mr. Cencelewski was "limited to simple, routine, repetitive tasks with only occasional decision making and changes in the work setting, no strict production quotas, no interaction with the general public, and only occasional interaction with co-workers and supervisors." The ALJ also limited Mr. Cencelewski to environments involving moderate noise.

When the Appeals Council denied Mr. Cencelewski's request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II. STANDARD OF REVIEW

The issue before the court isn't whether Mr. Cencelewski is disabled, but whether substantial evidence supports the ALJ's decision that he wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate

3

findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

III. Discussion

Mr. Cencelewski argues that the ALJ made four errors that require remand: (1) she didn't consider all relevant evidence in adjudicating his claim; (2) she didn't consider the aggregate effect of Mr. Cencelewski's impairments, (3) her credibility determination was flawed, and (4) her residual functional capacity assessment improperly omitted restrictions related to his interaction with coworkers and fatigue. Mr. Cencelewski asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

*A. Relevant Evidence*

Mr. Cencelewski argues that the ALJ erred by not considering all relevant evidence when determining the limiting effects of his mental impairments, including evidence regarding his depressive symptoms and his Global

Assessment of Functioning (GAF) scores.[4] Mr. Cencelewski contends that the ALJ considered only the evidence that suggested he had experienced improvement with regard to his mental impairments, but ignored medical reports indicating his symptoms of depression were worsening. The Commissioner says the ALJ wasn't required to address every piece of evidence in her decision. Citing Sims v. Barnhart, 309 F.3d 424, 429 (7th Cir. 2002).

The ALJ addressed three 2014 psychological treatment reports: a January 2014 report she noted "indicated that [Mr. Cencelewski] was doing very well", and two February 2014 reports, one describing Mr. Cencelewski's prognosis as "excellent" and the other stating that he was enjoying activities, with good motivation and energy levels. She cited 2013 and 2014 medical reports to support her opinion that Mr. Cencelewski was "doing well." But the ALJ didn't address medical reports from that period contradicting her opinion. She didn't address an April 2014 report from Mr. Cencelewski's treating psychiatrist indicating Mr. Cencelewski had worsening depressive symptoms. Nor did she address reports from November 2013, January 2014, or April 2014 by his treating psychologist noting that his Beck Depression Inventory score indicated severe depression.

---

[4] A GAF score represents the clinician's judgment of the patient's psychological, social, and occupational functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). Patients are measured on a 100 point scare that is divided into ten ranges of functioning. Id. The Diagnostic and Statistical Manual of Mental Disorders no longer includes the GAF metric, but ALJ's may still consider GAF scores as opinion evidence. See Williams v. Colvin, 757 F.3d 610, 613 (7th Cir. 2014).

An ALJ isn't "permitted to 'cherry-pick' from [mixed treatment records] to support a denial of benefits," Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011), and "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014). *See also* Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008) ("the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade"). "An ALJ may not selectively consider medical reports . . . but must consider all relevant evidence." Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) (internal quotations omitted).

Mr. Cencelewski also asserts that the ALJ erred by not addressing a GAF score that could have supported his disability claim, while relying on other GAF scores to support her determination that he wasn't disabled.

The ALJ addressed four GAF scores in her opinion, ranging from 55 to 70, and indicated that the scores of 65, 67 and 70 suggested Mr. Cencelewski's symptoms were mild and that while he might experience "some difficulty in occupational and social functioning" he was "generally functioning reasonably well." She noted that the GAF score of 55 indicated "moderate symptoms, or moderate difficulty in social and occupational functioning." But the ALJ didn't consider a GAF score of 50 reported by psychiatrist Hossein Ebadi-Tehrani, which indicated serious symptoms or serious impairment in social, occupational, or school functioning and can reflect an inability to keep a job. *See* Campbell v.

6

Astrue, 627 F.3d 299, 307 (7th Cir. 2010); AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000).

The Commissioner contends that a GAF score is nothing more than a snapshot of a claimant's functioning at a particular moment, and the ALJ was correct to disregard this particular GAF score because it occurred on the day Mr. Cencelewski presented himself for addiction treatment. But the ALJ didn't provide any rationale for disregarding this GAF score and "the agency's attorneys may not advance an explanation the agency never made itself and may not attempt to support the decision with evidence the agency apparently did not consider." Arnett v. Astrue, 676 F.3d 586, 593 (7th Cir. 2012).

Further, the Commissioner's argument goes more to the weight the ALJ should have given the GAF score, rather than whether she should have addressed it. "[T]he problem here is not the failure to individually weigh the low GAF score[ ] but a larger general tendency to ignore or discount evidence favorable to [Mr. Cencelewski's] claim, which included [a] GAF score[ ] . . . suggesting a far lower level of functioning than that captured by the ALJ's hypothetical and mental RFC." Yurt v. Colvin, 758 F.3d 850, 860 (7th Cir. 2014). Because the ALJ didn't properly address evidence in the record supporting Mr. Cencelewski's disability claims, this case must be remanded.[5]

---

[5] Mr. Cencelewski also argues that the ALJ didn't properly consider other evidence, including evidence regarding his mood. Mr. Cencelewski notes that the ALJ didn't address a February 2013 treatment note indicating that he reported that his mood "was a little down" the prior few weeks. But the ALJ did note that a March 2013 medical

7

### B. Combined Effects of Impairments

Mr. Cencelewski next contends that the ALJ erred by not explaining how she considered the combined effect of his impairments in making her residual functional capacity assessment. The Commissioner responds that the ALJ properly considered Mr. Cencelewski's impairments because she discussed each impairment individually and concluded that the impairments didn't prevent him from working.

The ALJ was required to "consider the *aggregate* effect of th[e claimant's] entire constellation of ailments–including those impairments that in isolation are not severe." Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original); 20 C.F.R. §§ 404.1523, 416.923. *See also* Williams v. Colvin, 757 F.3d 610, 613 (7th Cir. 2014); Browning v. Colvin, 766 F.3d 702, 706 (7th Cir. 2014).

If an ALJ considers each impairment individually, finding that none of them alone would prevent the claimant from working, but doesn't demonstrate that she considered how the impairments in combination would impact the claimant's ability to work, the case must be remanded. Thomas v. Colvin, 745

---

report found that Mr. Cencelewski's "mental disorders manifested with symptoms including low energy" and that a November 2013 report found that his depressive symptoms were still present. "In rendering a decision, an ALJ must build a logical bridge from the evidence to [her] conclusion, but [she] need not provide a complete written evaluation of every piece of testimony and evidence." Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013).

8

F.3d 802, 807 (7th Cir. 2014). *But see* Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (holding that an ALJ sufficiently articulates her analysis if she separately discusses the claimants impairments, subjective complaints, and daily activities and then concludes that those impairments don't prevent the claimant from working).

The ALJ discussed Mr. Cencelewski's impairments individually in her opinion, but her analysis doesn't support a conclusion that she considered the combined effect of Mr. Cencelewski's impairments, such as how his depressive disorder and sleep apnea, in combination, impacted his ability to work. On remand, the ALJ should consider the aggregate effect of all of Mr. Cencelewski's impairments.

*C. Credibility Determination*

Mr. Cencelewski contends that the ALJ's credibility determination was flawed because, among other things, she improperly relied on a lack of functional restrictions in his treatment notes. The Commissioner contends that the ALJ provided a well-reasoned credibility evaluation that addressed the evidence in light of the regulatory factors.

ALJ credibility determinations "are entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness," but those determinations "are not immune from review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005); *see also* Schmidt v. Astrue, 496

9

F.3d 833, 843 (7th Cir. 2007) ("[b]ecause the ALJ is in the best position to observe witnesses, [the court] will not disturb [his] credibility determinations as long as they find some support in the record"). When evaluating credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p[6]). The reviewing court must determine whether the ALJ's determination "was reasoned and supported," Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008), and shouldn't "overturn an ALJ's credibility determination unless it is patently wrong." Shideler v. Astrue, 688 F.3d 306, 311 (7th Cir. 2012) (quotations omitted).

The ALJ found that Mr. Cencelewski's "allegations with regard to the extent and severity of his limitations [were] not fully credible" in part because "no treating source ha[d] assessed limitations on [Mr. Cencelewski's] ability to engage in work related activities." But when a claimant is unemployed, as Mr. Cencelewski was during the relevant period, it's improper for an ALJ to infer that "the absence of work restrictions in [a claimant's] medical record undermined [his] claims of disabling impairments" because "[t]he absence of major work restrictions in [a claimant's] medical records does not illuminate the question of [his] credibility." Eskew v. Astrue, 462 F. App'x 613, 616 (7th Cir. 2011).

---

[6] SSR 96-7p was superseded by SSR 16-3p on March 16, 2016. SSR 96-7p was binding on the ALJ when her opinion was issued. See Lauer v. Bowen, 818 F.2d 636, 640 (7th Cir. 1987).

10

This matter is being remanded on other issues, so the court needn't reach any conclusions as to whether this problem alone makes the ALJ's credibility determination patently wrong or address the other concerns Mr. Cencelewski raised regarding the ALJ's credibility determination. On remand, the ALJ should ensure that her credibility determination is reasoned, supported, and based only on the proper factors. *See* Creek v. Village of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, (1939) (recognizing that a lower court is free to consider issues even if they weren't included within the mandate of the reviewing court).

*D. Residual Functional Capacity*

Mr. Cencelewski contends that the ALJ's findings regarding his residual functional capacity improperly omitted restrictions such as limiting his interaction with coworkers. Two state agency mental health consultants, Drs. Ken Lovko and J. Grange opined that Mr. Cencelewski could "relate on at least a superficial basis" with coworkers. The ALJ gave the consultants' opinions significant weight while recognizing that her determination varied some from their opinions on Mr. Cencelewski's limitations. The ALJ found, as part of her assessment, that Mr. Cencelewski was limited to only occasional interaction with coworkers, but was silent as to the depth of that contact with coworkers.

Mr. Cencelewski argues that the ALJ's assessment of his functional capacity was improper because she should have limited him to superficial

contact with coworkers. But Mr. Cencelewski doesn't point to evidence from any source opining that he could only relate to coworkers superficially. The consultants' reports he cites indicates that Mr. Cencelewski could relate to his coworkers *at least* superficially.

Mr. Cencelewski also asserts that the ALJ erred by not explaining why she didn't include work-related functional limitations related to his fatigue in her residual functional capacity assessment. While the ALJ recognized that Mr. Cencelewski complained of fatigue and that his fibromyalgia could cause fatigue, she didn't provide any discussion of the limiting effects of fatigue or indicate whether she accounted for it in her assessment. *See* Myles v. Astrue, 582 F.3d 672, 676–677 (7th Cir. 2009) (recognizing error when an ALJ acknowledges complaints of fatigue but doesn't articulate a rationale for rejecting them). On remand, the ALJ should consider the combined effects of Mr. Cencelewski's impairments, including fatigue, on his functional capacity.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is VACATED and this case is REMANDED for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED:     March 28, 2017

/s/ Robert L. Miller, Jr.
Judge, United States District Court